**JURY TRIAL DEMANDED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**STACEY ALICIA BONDS**                                                                **PLAINTIFF**

**VS.**                                                           **CIVIL ACTION NO. 5:24-cv-33-DCB-LGI**

**SONYA WOODALL, INDIVIDUALLY**
**AND IN HER OFFICIAL CAPACITY AS**
**CHIEF OF THE MAGNOLIA POLICE**
**DEPARTMENT;**
**MIKE MILHOLEN, INDIVIDUALLY**
**AND IN HIS OFFICIAL CAPACITY AS**
**A MAGNOLIA, MISSISSIPPI**
**POLICE OFFICER; AND**
**THE CITY OF MAGNOLIA,**
**MISSISSIPPI**                                                                          **DEFENDANTS**

## COMPLAINT

THIS IS AN ACTION seeking monetary damages from the Defendants for violating Plaintiff's rights guaranteed under the United States Constitution, Mississippi law, and under the Mississippi Tort Claims Act. The Defendants are Sonya Woodall, Individually and in Her Official Capacity as Chief of the Magnolia Police Department; Mike Milholen, Individually and in His Official Capacity as a Magnolia, Mississippi Police Officer; and the City of Magnolia, Mississippi. The Defendants wrongfully, without just and probable cause, willfully, and maliciously arrested, seized, held, and incarcerated Plaintiff at the Magnolia, Mississippi, Police Department, and later held the Plaintiff in the Pike County, Mississippi, jail. The Defendants were deliberately indifferent to the rights of the Plaintiff, and deprived Plaintiff of her freedom, and wrongfully published the Plaintiff's arrest and incarceration, when all the while the Defendants were acting

under color of law of the State of Mississippi. The federal and state claims are for false arrest, false imprisonment, and malicious prosecution.

## JURISDICTION

**1.**

The jurisdiction of this action is secured pursuant to 28 U.S.C. §§ 1343 and 1331, and 2201 for this cause of action arising under 42 U.S.C. § 1983, along with jurisdiction under 28 U.S.C. § 1367 which codifies and strengthens the prior doctrines of "supplemental" jurisdiction. Jurisdiction of this Court also is proper pursuant to Miss. Code Ann. § 11-46-13 of the Mississippi Tort Claims Act.

**2.**

Pursuant to the "Mississippi Tort Claims Act," § 11-46-1, *et seq.,* of the Mississippi Code of 1972, as amended, Plaintiff Stacey Alicia Bonds has satisfied all notice requirements to the Defendants, Sonya Woodall, Individually and in Her Official Capacity as Chief of the Magnolia Police Department; Mike Milholen, Individually and in His Official Capacity as a Magnolia, Mississippi Police Officer; and the City of Magnolia, Mississippi, by Certified Mail, Return Receipt Requested, to Ms. Becky Buie, Chancery Clerk, Pike County, Mississippi, P. O. Box 309, Magnolia, MS 30652; Ms. Tammy Witherspoon, Mayor, City of Magnolia, Mississippi, 175 E. Railroad Ave. N., Magnolia, MS 39652; Hon. Ben L. Gilbert, Pike County Prosecuting Attorney, 802 Burke Ave., McComb, MS 39648; Police Chief Sonya Woodall, Magnolia Police Department, 235 South Cherry Street, Magnolia, MS 39652; Dr. Luke Lampton, President of the School Board for South Pike School District, 250 West Bay Street, Magnolia, MS 39652, giving notice of the claim being asserted by the Plaintiff, Stacey Alicia Bonds, herein. A true and correct

copy of said Notice of Claim dated December 28, 2023 is annexed hereto, incorporated herein and identified as Exhibit "A." The Plaintiff, Stacey Alicia Bonds, has therefore exhausted all administrative remedies as required by law and is entitled to bring this action against the Defendants, Sonya Woodall, Individually and in Her Official Capacity as Chief of the Magnolia Police Department; Mike Milholen, Individually and in His Official Capacity as a Magnolia, Mississippi Police Officer; and the City of Magnolia, Mississippi.

## VENUE

**3.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that Plaintiff resides and at all times material Defendants were employed in and resided in the Southern District of Mississippi, Western Division, and the events or omissions giving rise to these causes of action occurred in that same judicial district, judicial division, and State.

## PARTIES

**4.**

Plaintiff Stacey Alicia Bonds is, at all times material, a citizen of the United States and a resident of Pike County, Mississippi.

**5.**

Defendant Sonya Woodall was at all times material acting as Chief of Police of Magnolia, Pike County, Mississippi.

**6.**

Defendant Mike Milholen was at all times material acting as a Police Officer of Magnolia, Pike County, Mississippi.

**7.**

The Defendant City of Magnolia is a duly incorporated and organized public entity within the State of Mississippi.

**8.**

At all times material the Defendants' custom or policy served as a moving force behind the constitutional and statutory violations at issue, and the Plaintiff's injuries directly resulted from the execution of the official policy or custom.

**9.**

At all times material hereto, Defendant Woodall and Milholen were acting under color of law, usage, and custom of the State of Mississippi.

**FACTS**

**10.**

The Defendants' failure to comply with § 99-3-28 of the Mississippi Code of 1972, Annotated, along with the Defendants' failure to give the Plaintiff an initial appearance within forty eight (48) hours after the illegal arrest, was the moving force behind said state and federal constitutional and statutory violations that damaged and continue to damage the Plaintiff.

**11.**

Plaintiff was employed as a school teacher in the South Pike School District at the Eva Gordon Elementary School and was so employed on April 13, 2023.

**12.**

At approximately 6:45 A.M. on the morning of April 13, 2023, Plaintiff's KIA automobile would not unlock due to the key fob batteries being dead. Plaintiff called KIA Connect. KIA

Connect is a service operated by KIA that allows for the remote unlocking, engine start, and other KIA automobile services. No one answered but Plaintiff utilized the "chat" function of her KIA Connect app on her phone and a signal was sent unlocking the vehicle and starting the engine.

**13.**

At approximately 7:25 A.M. Plaintiff arrived at Eva Gordon Elementary and clocked in. Plaintiff continued attempting to contact KIA Connect as the Plaintiff still could not unlock her car doors.

**14.**

At approximately 7:33 A.M. Plaintiff attempted to call KIA Connect for the seventh time as she was standing in the hallway outside her classroom. Plaintiff was finally able to get a human being on the phone. Plaintiff was clearly frustrated by all the attempts made and explained to the KIA representative that she wasn't frustrated with the representative but that she paid $19.00 a month for the KIA Connect service and that it was not working and had not been working for some time. Plaintiff told the representative "Help me not be frustrated so that I won't kill 20 kindergartners today." The other two teachers in the hallway laughed with her.

**15.**

The representative agreed to walk the Plaintiff through fixing the app. The representative explained that they had had problems like the Plaintiff's before. After the problem was solved the Plaintiff said, "Thank you so much for all of your help. You have been a blessing. I appreciate you so much. You just saved 20 kindergartners' lives."

**16.**

The Plaintiff got off the phone with the KIA representative at approximately 7:48 A.M.

The Plaintiff began greeting her students as they were coming in the door and proceeded with her morning.

**17.**

At approximately 9:15 A.M. the Plaintiff had a knock on her classroom door. The school principal, Dr. Geneva Holmes, Sonya Woodall, Chief of Magnolia Police, Mike Milholen, investigator with the Magnolia Police Department, and the School Resource Officer, Mrs. Quin, were at the door. The Plaintiff was asked to step outside her classroom. Chief Woodall asked if the Plaintiff had called KIA and had threatened to kill 20 kids. The Plaintiff said yes, but not in that context. Chief Woodall explained that the KIA representative had called 911 and reported it. Chief Woodall stated that it didn't matter how the Plaintiff meant it, the Plaintiff threatened to kill students and that "wasn't going to happen in Magnolia." The Plaintiff attempted to explain again and was told again by Mike Milholen that it didn't matter what the Plaintiff meant. It was still said and the representative called 911. Principal Holmes told the Plaintiff that the Plaintiff was going to have to go home until it could be resolved. The Plaintiff tried to go into the Plaintiff's room to get her personal items and was told by Defendant Woodall in Defendant Milholen's presence that she could not go alone and would have to be escorted. The School Resource Officer Quinn escorted the Plaintiff into the room to get the Plaintiff's personal belongings. Principal Holmes stayed with the Plaintiff's class until the Plaintiff's assistant returned. Chief Woodall, Investigator Milholen, and SRO Quinn escorted Plaintiff to the principal's office because they wished to talk to the Plaintiff further.

**18.**

Plaintiff Bonds was wrongfully, illegally, and without probable cause detained and arrested

by Defendant Woodall and Defendant Milholen by being wrongfully detained at the school and not being allowed to leave.

### 19.

Upon entering the office Chief Woodall, Investigator Milholen, and SRO Quinn asked the Plaintiff to go over the time line of events. The Plaintiff told them again what had occurred, and explained that the Plaintiff obviously didn't mean it like that and that they knew the Plaintiff and knew the Plaintiff was not that type of person. Chief Woodall, Investigator Milholen, and SRO Quinn told the Plaintiff that it didn't matter. Superintendent Dr. Angela Lowery and Assistant Superintendent Warren Banks came into the office and asked Chief Woodall if she would send them a report of what was going on with the case. Superintendent Lowery told the Plaintiff that the Plaintiff would be placed on administrative leave with pay until the matter was resolved.

### 20.

Chief Woodall asked the Plaintiff if the Plaintiff would go with the officers to the Sheriff's office and give a formal statement. The Plaintiff agreed. The Plaintiff was told that she could come back for her car. The officers cleared the hallway and the Plaintiff walked out with them. The Plaintiff placed her belongings in the back of Investigator Milholen's truck and got in the front seat. The Plaintiff and officers went to the Sheriff's Department and Investigator Milholen told the Plaintiff to leave her belongings in the back and that he would get them out after the interview was over. The Plaintiff and officers went into the Sheriff's Department and Investigator Milholen told the Plaintiff to sit in a small interrogation room, and Investigator Milholen would return shortly with a recorder. When Investigator Milholen returned, he read the Plaintiff her Miranda rights and asked the Plaintiff if the Plaintiff felt okay to give Investigator Milholen her version of what had

happened. Plaintiff remained under arrest by being directed and ordered by Defendants Woodall and Milholen to give a recorded statement. Plaintiff at this point reasonably knew she would not be allowed to leave the Magnolia Police Department. The Plaintiff said that she would explain her version of the events, and Investigator Milholen began to record the Plaintiff's statement. After Investigator Milholen recorded the statement, he asked the Plaintiff if she would agree to give a written statement. The Plaintiff agreed, and Investigator Milholen brought the Plaintiff paper and a pencil. When the Plaintiff finished writing the statement, Investigator Milholen took it into another room, and left the Plaintiff alone for approximately five minutes.

**21.**

When Investigator Milholen returned, there was a male and female with him. The male told the Plaintiff to stand up, turn around, and place her jewelry on the table. The Plaintiff asked why, and Investigator Milholen said that the Plaintiff was under arrest. Plaintiff at this point was "formally arrested" even though she had been under arrest the entire time after meeting with Defendants Woodall and Milholen at the school and traveling to the Magnolia Police Department. At no time material was she allowed to leave. Plaintiff now was formally placed under arrest. The Plaintiff began to cry and asked why. Investigator Milholen stated that the Plaintiff was not going to threaten to kill children in Magnolia. The Plaintiff said that she did not mean that. Investigator Milholen said it did not matter, that the Plaintiff was still under arrest. The Plaintiff was handcuffed and escorted to a booking room, where the Plaintiff had to change clothes, and have fingerprints done. Investigator Milholen could not figure out what to charge the Plaintiff with, and the Plaintiff had to wait approximately fifteen (15) minutes until Investigator Milholen could figure out what

the charges were. Investigator Milholen filed an affidavit against the Plaintiff alleging the Plaintiff had made Terroristic Threats and an arrest warrant was issued for the Plaintiff.

**22.**

On April 13, 2023, Defendant Milholen executed under oath an Affidavit accusing Plaintiff of MAKING OF TERRORISTIC THREATS [97-7-75] as follows:

> Underlying Facts & Circumstances
> On April 13, 2023 at approximately 0828 hours, Officers were notified of a 911 call to McComb Central Dispatch from Bonnie Bauer, an employee of Kia Motors. The call was en [sic] reference to a teacher (Stacey Alicia Bonds) at Eva Gordon Lower Elementary School making threats to kill twenty (20) kindergarten students if they did not fix her APP on her phone that operates the locks on her Kia Vehicle. Once the APP was fixed, Bonds stated that you just saved the students['] [sic] lives.

Said Affidavit is annexed hereto and incorporated herein as Exhibit "B." Said Underlying Facts & Circumstances Affidavit is fabricated and misleading. Throughout all discussions with Defendants, Plaintiff Bonds explained that they were taking what she said about her students out of context. During all interrogations and conversations, Plaintiff continually told Defendants that she did not mean that she was actually going to "kill" her students, and they were taking her statement out of context. Said Underlying Facts & Circumstances is misleading because it does not allege that ". . . the threat does in fact cause a reasonable expectation or reasonable fear of the imminent commission of an offense." Section 97-7-75(2)(a) of the Mississippi Code Annotated of 1972 (Supp. 2019). The Affidavit also does not allege that Plaintiff intended to ". . . [i]ntimidate or coerce a civilian population or segment of a civilian population . . . [or] influence or affect, by intimidation or coercion, the policy or conduct of a unit of government, educational institution, business or segment of the civilian population. . . ." Section 97-7-75(2)(a)(I), (ii). Given the

factual circumstances of the Defendants' interplay and interrogation of Plaintiff, it was obvious that Plaintiff did not intend to harm anyone and there was no probable cause for her arrest.

**23.**

The Plaintiff was told that she could not have a bail and that the Plaintiff would have to wait in the Pike County jail until Monday, April 17, 2023 at 5:00 PM to have a bail hearing. The Plaintiff asked if she could make a call to her husband to let him know where the Plaintiff was. The Plaintiff was allowed to call her husband. The Plaintiff had been processed at the Pike County, Mississippi jail. After the Plaintiff made her phone call, she was escorted to a holding cell.

**24.**

On April 17, 2023, the Plaintiff had a bond hearing in the Magnolia City Court, in Magnolia, Mississippi. At the bond hearing, the Plaintiff was originally denied any bond but was eventually given a bond in the amount of $750,000.00.

**25.**

On April 19, 2023, at approximately 9:15 A.M. the Plaintiff was suddenly released from her incarceration in the Pike County jail. The Plaintiff called her husband to come and pick her up from the Pike County jail.

**26.**

On April 19, 2023, at approximately 11:00 A.M. Ben Gilbert, Pike County, Mississippi's prosecuting attorney, came to the Plaintiff's home and apologized to the Plaintiff for what had occurred and served her with a copy of a "Petition for Probable Cause Hearing" Gilbert had filed earlier that morning in the Pike County Circuit Court. Along with the Petition, Gilbert gave the Plaintiff a Notice of Hearing for the Probable Cause hearing for the next day, April 20, 2023 at

1:30 P.M. in the Circuit Court of Pike County, Mississippi in front of the Hon. Michael Taylor, Circuit Judge for Pike County. That hearing was cancelled and reset for May 23, 2023.

**27.**

On April 21, 2023, the Plaintiff received a letter from the South Pike School District saying that she had been terminated. The Plaintiff requested a hearing regarding the termination from the South Pike School District.

**28.**

On May 9, 2023, the administrative termination hearing was set for May 19, 2023. The Plaintiff was advised that it would be better for her to resign than have the hearing.

**29.**

On May 19, 2023, the Plaintiff resigned from the South Pike School District.

**30.**

At the Probable Cause hearing on May 23, 2023, the prosecution offered the Plaintiff a plea to a misdemeanor charge instead of going through with the Probable Cause hearing. The Plaintiff refused to enter any plea, and the Probable Cause hearing was cancelled.

**31.**

On May 25, 2023, the Plaintiff retained counsel, Thomas Patrick Welch, Jr. to represent her in any future matters dealing with the criminal charge. Welch wrote the Pike County District Attorney's Office regarding his representation of the Plaintiff, and gave notice that the Plaintiff demanded to testify if the matter was presented to a Pike County Grand Jury.

**32.**

On August 31, 2023, the criminal charge was presented to a Grand Jury and the Plaintiff

testified before the Grand Jury for approximately ten (10) minutes, in the presence of Pike County Assistant District Attorney Timothy Jones. The Grand Jury obviously found that Plaintiff's statements did not constitute "terroristic threats" as defined by said statute when it properly no billed the charges filed against Plaintiff. Annexed hereto and incorporated herein as Exhibit "C" is the September 12, 2023 letter from the District Attorney's Office stating the case against the Plaintiff had been "no billed."

### 33.

The Defendants' conduct as to the Plaintiff evokes outrage or revulsion, the results being foreseeable, such that damages may be assessed for mental anguish and emotional distress for the Plaintiff, along with punitive damages.

### 34.

Defendants violated § 99-3-28 of the Mississippi Code Annotated of 1972 which holds:

> 1(a)(I) Except as provided in subsection (2) of this section, before an arrest warrant shall be issued against any teacher who is a licensed public school employee as defined in Section 37-9-1, a certified jail officer as defined in Section 45-4-9, a counselor at an adolescent opportunity program created under Section 43-27-201 et. seq., or a sworn law enforcement officer within this state as defined in Section 45-6-3 for a criminal act, whether misdemeanor or felony, which is alleged to have occurred while the teacher, jail officer, counselor at an adolescent opportunity program or law enforcement officer was in the performance of official duties, a probable cause hearing shall be held before a circuit court judge. The purpose of the hearing shall be to determine if adequate probable cause exists for the issuance of a warrant. All parties testifying in these proceedings shall do so under oath. The accused shall have the right to enter an appearance at the hearing, represented by legal counsel at his own expense, to hear the accusations and evidence against him; he may present evidence or testify in his own behalf.
>
> (ii) The authority receiving any such charge or complaint against a teacher, jail officer, counselor at an adolescent offender

> program or law enforcement officer shall immediately present same
> to the county prosecuting attorney having jurisdiction who shall
> immediately present the charge or complaint to a circuit judge in
> the judicial district where the action arose for disposition pursuant
> to this section.

Plaintiff was incarcerated in the Pike County jail from April 13, 2023 until April 19, 2023 without any offer or provision of a probable cause hearing. With a legally mandated probable cause hearing, the Plaintiff would have spent no time incarcerated in the Pike County jail. The Defendants' failure to give the Plaintiff an initial appearance within forty-eight (48) hours after the illegal arrest was the "moving force" behind said constitutional violations that damaged and continue to damage the Plaintiff.

**35.**

There was an absence of probable cause for the false arrest and false imprisonment in violation of Mississippi law.

**36.**

The Defendants acted with malice or with deliberate indifference or reckless disregard to the rights of the Plaintiff both in arresting the Plaintiff and in filing formal charges and having arrest warrants issued for the Plaintiff, justifying an award of punitive damages.

**37.**

Malicious prosecution occurred because there was a criminal proceeding, instituted by the Defendants, the termination of such proceeding went in Plaintiff's favor, there was malice in instituting the proceeding, there was want of probable cause for the proceeding, and the Plaintiff suffered injury and damage as a result of the prosecution.

**38.**

As a direct and proximate result of the false arrest, false imprisonment, and malicious prosecution in violation of federal and Mississippi law, the Plaintiff has undergone medical care and incurred significant medical expenses. The Plaintiff also has suffered significant damage to her reputation as a further direct and proximate result of the false arrest and false imprisonment, in violation of Mississippi law.

**39.**

The actions of the Defendants were not objectively reasonable.

**40.**

The Defendants did not have probable cause for the false arrest, false imprisonment, and malicious prosecution of the Plaintiff but, to the contrary, did have requisite knowledge of reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief an offense had not been committed by the Plaintiff.

**41.**

As a further direct and proximate result of the false arrest, false imprisonment, and malicious prosecution in violation of federal and Mississippi law, Plaintiff has expended significant money in retaining attorneys to represent her.

**42.**

As a further direct and proximate result of her false arrest and false imprisonment in violation of Mississippi law, and the publicity surrounding said false arrest and false imprisonment in violation of Mississippi law, the Plaintiff lost her employment and income therefrom.

## Count I

**43.**

Said actions by the Defendants as to the Plaintiff has deprived the Plaintiff of her rights under United States Code Title 42 § 1983 as well as the United States Constitution, guaranteed by the Fourth and Fourteenth Amendments thereto:

a. Freedom from a deprivation of liberty without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

b. Right not to be arrested, seized, and incarcerated without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

c. Right not to be summarily punished and injured by a false arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**44.**

Defendants have subjected Plaintiff to such deprivations of law either by malice or reckless disregard for the Plaintiff's rights, justifying an award of punitive damages from Defendants Sonya Woodall, and Mike Milholen, individually.

**45.**

As a direct and proximate result of the Defendants' acts, Plaintiff has incurred pain, suffering, and severe mental anguish and emotional distress, been subjected to lost employment, wages and fringe benefits, legal expenses, damage to her reputation, and impairment of family relationships.

**46.**

The Defendants' conduct as to the Plaintiff evokes outrage or revulsion, the results being

foreseeable, such that damages may be assessed for mental anguish and emotional distress for the Plaintiff, along with punitive damages.

## Count II

### 47.

The Defendants' actions in effecting the false arrest, false imprisonment, and malicious prosecution were in violation of federal and Mississippi law. Also the Defendants were so lacking in indicia of probable cause as to render official belief in the existence of probable cause unreasonable.

### 48.

The Defendants' actions constitute malicious prosecution under Mississippi law and a violation of 42 U.S.C. § 1983.

### 49.

There was an absence of probable cause for the false arrest and false imprisonment in violation of federal and Mississippi law of the Plaintiff.

### 50.

The Defendants acted with malice or with deliberate indifference and reckless disregard of the rights of the Plaintiff both in arresting the Plaintiff and in filing formal charges and having an arrest warrant issued for the Plaintiff, and incarcerating her in the Pike County, Mississippi jail, justifying an award of punitive damages.

### 51.

As a direct and proximate result of the malicious prosecution and false arrest and false imprisonment in violation of federal and Mississippi law, Plaintiff has undergone medical care and

incurred significant medical expenses. Plaintiff also has suffered significant damage to her reputation as a further direct and proximate result of the false arrest and false imprisonment in violation of Mississippi law.

### 52.

The actions of the Defendants were not objectively reasonable.

### 53.

The Defendants did not have probable cause for the false arrest and false imprisonment of the Plaintiff in violation of federal and Mississippi law, but, to the contrary, did have requisite knowledge of reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief an offense had not been committed by the Plaintiff.

### 54.

As a further direct and proximate result of the false arrest and false imprisonment in violation of federal and Mississippi law, Plaintiff has expended significant money in retaining attorneys to represent her.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief of and from the Defendants, jointly and severally:

1. A judgment for past and future medical expenses reasonably incurred by Plaintiff.

2. Reasonable costs and reasonable attorneys' fees, along with prejudgment and post-judgment interest.

3. Back pay suffered by Plaintiff because of termination from her employment.

4. An award of compensatory damages of Seven Hundred Fifty Thousand Dollars ($750,000.00) for personal injury, pain and suffering, mental anguish, emotional distress, and

damage to reputation.

5. Punitive damages in the amount of One Million Dollars ($1,000,000.00) of and from Defendants Sonya Woodall, and Mike Milholen, individually.

6. Pursuant to the Mississippi Tort Claims Act, Plaintiff Stacey Alicia Bonds respectfully requests this Court to enter judgment in her favor in the amount of $500,000.00, or if an applicable liability insurance policy (or policies) exist, to an amount exceeding $500,000.00, but not exceeding the policy limits of any applicable liability insurance policy (or policies), and the costs of this cause.

Respectfully submitted, the 29th day of March, 2024.

/s/ Dennis L. Horn
Dennis L. Horn, Attorney for Plaintiff,
Stacey Alicia Bonds

Dennis L. Horn (MSB #2645)
Shirley Payne (MSB # 4071)
Leigh Horn (MSB #105481)
HORN & PAYNE, PLLC
P. O. Box 2754
Madison, MS 39130-2754
Phone: (601) 853-6090
FAX: (601) 853-2878
hornpayne@gmail.com
leighkpaynehorn@gmail.com