IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

STACY ALICIA BONDS                                              PLAINTIFF

v.                                    CIVIL ACTION NO. 5:24-cv-33-DCB-ASH

SONYA WOODALL, ET AL.                                          DEFENDANTS

ORDER

THIS MATTER comes before the Court on the Motion for Summary
Judgement filed by Defendants Sonya Woodall, Mike Milholen, and
the City of Magnolia [ECF No. 43]. For the reasons discussed below,
the motion is DENIED.

I.  Background

This dispute arises out of Plaintiff's arrest for making a
terroristic threat. [ECF No. 43-5]; [ECF No. 1] at 19. At the time
of her arrest, Plaintiff was a kindergarten teacher in Magnolia,
Mississippi. [ECF No. 44] at 1; [ECF No. 50] at 4. On the morning
of April 13, 2023, Plaintiff Stacy Alicia Bonds ("Plaintiff") was
unable to unlock her KIA car using the app on her phone. [ECF No.
44] at 2 (citing [ECF No. 43-1] at 84-88). She tried to call KIA
support but was unsuccessful. [ECF No. 43-1] at 85. Nevertheless,
she managed to get her car started and drive to the school where
she worked, but once she arrived, she could not lock her vehicle.
Id. at 86. She once again attempted to call KIA support and finally
reached a representative. Id. at 84-89. Her call with the KIA

support representative took place before school started, but students began to trickle in "towards the end of the conversation." Id. at 93-94.

During the call, Plaintiff twice warned the KIA representative that she was upset and her "aggression level" was "very high." [ECF No. 44] at 2 (citing [ECF No. 43-1] at 89-90; [ECF No. 43-2], Recording of Plaintiff's call to KIA). Plaintiff relayed her issues to the representative, asking "Is there any way you can help me this morning so that I can teach my class and not kill some little kindergarteners?" Id. The KIA representative helped Plaintiff fix her app, which allowed Ms. Bonds to lock/unlock and start her car. Id. Plaintiff then thanked the representative, stating "you have saved 20 children from being killed." Id.

After the call, the KIA representative called 911 and reported Plaintiff's threats. [ECF No. 44] at 3 (citing [ECF No, 43-1] at 83-84; [ECF No. 43-3]; [ECF No. 43-4]). Meanwhile, Plaintiff was starting her day with her students as usual when Dr. Holmes, the principal, knocked on the door of her classroom and asked her to step out. [ECF No. 43-1] at 94-96. When Plaintiff stepped out, she was met with three officers who asked whether she had made a call to KIA that morning in which she threatened to kill kindergarten students. Id. at 96-97. Plaintiff admitted to making these statements but claimed that her comments were "taken out of

context." Ms. Bonds then agreed to go to the principal's office with the officers, where she "gave them details about what had happened." Id. at 102-103.  Once she had told her story, she was asked to come down to the police station to make a formal statement, which she did, as she said in her deposition, "because I had nothing—nothing to hide." Id. at 103. Once she arrived at the station, Chief Woodall read Ms. Bonds her Miranda rights and she willingly gave her statement. Id. at 106-107. After Ms. Bonds had given her oral and written statement, she was placed under arrest and charged with making terroristic threats; she stayed in the detention facility from the Thursday she was arrested through the following Monday. Id. at 116-117.

Plaintiff Stacy Alicia Bonds brings both federal and state law claims against Defendants. First, brings claims under U.S.C. 42 § 1983 for (1) deprivation of liberty without due process of law under the Fourth and Fourteenth Amendments, (2) unreasonable search and seizure without probable cause under the Fourth and Fourteenth Amendments, and (3) false arrest in violation of the Fourth and Fourteenth Amendments. [ECF No. 1] at 15. Second, Plaintiff alleges that the "Defendants' actions in effecting the false arrest, false imprisonment, and malicious prosecution were in violation of federal and Mississippi law." Ms. Bonds further alleges that the defendants violated Miss. Code Ann. Section 99-

3-28(1)(a) by denying her a probable cause hearing before incarcerating her. This code section provides:

**(1)(a)**

**(i)** Except as provided in subsection (2) of this section, before an arrest warrant shall be issued against any teacher who is a licensed public school employee as defined in Section 37-9-1, a certified jail officer as defined in Section 45-4-9, a counselor at an adolescent opportunity program created under Section 43-27-201 et seq., or a sworn law enforcement officer within this state as defined in Section 45-6-3 for a criminal act, whether misdemeanor or felony, which is alleged to have occurred while the teacher, jail officer, counselor at an adolescent opportunity program or law enforcement officer was in the performance of official duties, a probable cause hearing shall be held before a circuit court judge. The purpose of the hearing shall be to determine if adequate probable cause exists for the issuance of a warrant. All parties testifying in these proceedings shall do so under oath. The accused shall have the right to enter an appearance at the hearing, represented by legal counsel at his own expense, to hear the accusations and evidence against him; he may present evidence or testify in his own behalf.

**(ii)** The authority receiving any such charge or complaint against a teacher, jail officer, counselor at an adolescent offender program or law enforcement officer shall immediately present same to the county prosecuting attorney having jurisdiction who shall immediately present the charge or complaint to a circuit judge in the judicial district where the action arose for disposition pursuant to this section.

Miss. Code Ann. § 99-3-28(1)(a). Plaintiff's complaint explains that she "was incarcerated in the Pike County jail from April 13, 2023, until April 19, 2023, without any offer or provision of a probable cause hearing." [ECF No. 1} ¶ 34. The complaint alleges that "[w]ith a legally mandated probable cause hearing, the

Plaintiff would have spent no time incarcerated in the Pike County jail." Id.

II. Legal Standard

In a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018). Instead, the non-movant must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871 (1994)).

The evidence must be viewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment

5

stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III. Analysis

A. Whether Defendants are Entitled to Summary Judgment on Plaintiff's Federal Law Claims

Title 42 U.S.C. § 1983 provides a vehicle by which plaintiffs may recover against any person "who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012). "An individual's right to be free from unlawful arrest is such a protected right, the violation of which may be grounds for a suit under § 1983." Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir. 1977). To recover for a constitutional violation under § 1983, the plaintiff must establish: (1) that "the defendant has deprived her of a right secured by the 'Constitution and laws' of the United States" and (2) that the defendant acted under the color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). While "[a]nyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983," private conduct is excluded

from the statute's reach. Blankenship v. Buenger, 653 Fed.Appx. 330, 335 (5th Cir. 2016) (internal quotations omitted).

Defendants claim that they are entitled to summary judgment on Plaintiff's federal law claims because she cannot show that she suffered a constitutional violation. [ECF No. 44] at 7. Even if Ms. Bonds could make out a constitutional violation, Defendants allege that she cannot make out a claim for municipal liability, and that the individual officers are entitled to qualified immunity. Id. Defendant explains that there is no genuine dispute as to any material fact which would allow Plaintiff to make out any of the federal claims she asserts. Id. Below, the Court addresses each of Plaintiff's federal claims as they are presented by Defendants in their motion, analyzing whether Defendants are entitled to summary judgment on each individual claim.

1. Plaintiff's Claims against Chief Woodall

Fist, Defendants assert that Plaintiff's claims against Chief Woodall must be dismissed because she was not personally involved in Plaintiff's arrest or prosecution. Id. To support this claim, Defendants cite to Turner v. Lieutenant Driver, in which the Fifth Circuit held that Lieutenant Driver could not be held liable under § 1983 because he was not "personally involved in the alleged constitutional deprivation or . . . engaged in wrongful conduct that is causally connected to the constitutional violation."

7

Turner v. Lieutenant Driver, 848 F.3d 678, 695-696 (5th Cir. 2017). Defendants claim that "[i]t is undisputed that Officer Milholen arrested Plaintiff, and Chief Woodall had nothing to do with Plaintiff's prosecution or Judge McKenzie's decisions regarding Plaintiff." [ECF No. 44] at 7. Therefore, Defendants maintain, Ms. Bonds's claims against Chief Woodall fail as a matter of law. Id.

Plaintiff responds that Chief Woodall is liable because she decides whether a criminal defendant is entitled to a probable cause hearing before a circuit judge. [ECF No. 50] at 2, 10. Plaintiff supports this assertion by referencing Chief Woodall's deposition, in which she appears to admit that she has the power to determine whether an arrested teacher is entitled to a probable cause hearing under Miss. Code Ann. Section 99-3-28(1)(a). [ECF No. 49-1] at 37-39. If Chief Woodall does have that power, she may be liable to Plaintiff. Therefore, the Court does not grant summary judgment on Plaintiff's claims against her.

2. Whether Plaintiff Suffered False Arrest/False
   Imprisonment

Ms. Bonds contends that her arrest violated the Fourth and Fourteenth Amendments because the Defendants did not have probable cause to arrest her. The Fourth Amendment protects individuals from unreasonable search and seizure. U.S. Const. amend IV. An arrest is considered reasonable under the Fourth Amendment if made

8

with "probable cause." Brown v. Lyford, 243 F.3d 185, 189 (5th Cir .2001) (holding plaintiff must demonstrate that he was arrested without probable cause to prove an unlawful arrest claim). Probable cause depends on the circumstances of an individual case and exists when the arresting officer has trustworthy knowledge that would allow a reasonable man to determine that the arrested person was committing a crime. U.S. v. Lowery, 436 F.2d 1171, 1174 (5th Cir .1970) (citing Craper v. U.S., 358 U.S. 307 (1959) and Carroll v. U.S., 267 U.S. 132, 162 (1925)).

Plaintiff claims that she was arrested and held without any probable cause, despite being entitled to a probable cause hearing as a teacher performing her duties at the time of the arrest. [ECF No. 1] ¶¶ 43, 47. Defendants' motion advances two arguments. First, they maintain that Officer Milholen had probable cause to arrest Ms. Bonds for violation of Mississippi law. [ECF No. 44] at 9-10. Second, Defendants argue that whether there was a violation of Miss. Code Ann. Section 99-3-28(1)(a) is irrelevant to the Section 1983 probable cause inquiry. Id. at 11.

The Court first addresses whether there is sufficient evidence of probable cause to grant Defendants' motion. Defendants claim that Officer Milholen had probable cause to arrest Ms. Bond for several different crimes. First, "it is a crime for any person to threaten a crime of violence or to threaten bodily injury to

9

another person if the threat causes a reasonable expectation or fear of the imminent commission of an offense, and if in making the threat the person has the intent to influence or affect, by intimidation or coercion, the conduct of a business." [ECF No. 44] at 9 (citing Miss. Code § 97-7-75(2)(a)(ii)). Plaintiff was charged with violating this code provision, and the motion for summary judgment claims that because the KIA representative was bothered enough by Plaintiff's comments to call 911, there was a reasonable expectation of the imminent commission of the offense. Id. Furthermore, "Plaintiff clearly had the intent to affect KIA's actions, i.e., she wanted her app fixed, by intimidation when she made the threats." Id.

The Court is not convinced by either of these arguments at this stage in the litigation. In a report, Officer A. Quinn of the Magnolia Police Department describes the KIA agent's 911 call. In the call, the agent explained that Ms. Bonds had threatened to kill her twenty kindergarten students if her issue was not resolved. [ECF No. 43-3]. The KIA agent proceeded to tell the police that after she resolved the issue, Plaintiff said, "You just saved 20 kindergarteners lives." Id. The fact that Ms. Bonds told the agent that the children's lives had been saved negates the "imminent commission" of the offense. Therefore, a fact issue exists as to whether the Magnolia Police Department had probable cause to arrest Ms. Bonds without a warrant.

Furthermore, it is not clear that Plaintiff made the statement about killing her students to "influence . . . by intimidation or coercion" the KIA agent into resolving her issues. The police report states that Ms. Bonds herself said she made those statements as "a joke because I was frustrated." Miss. Code § 97-7-75(2)(a)(ii); [ECF No. 43-3]. According to Ms. Bonds, the statement was not a threat intending to impel a desired result but was rather an expression of her frustration with the situation. Although the statement was in poor taste, there is still a genuine question of fact as to whether it was made with the intention proscribed by Miss. Code § 97-7-75(2)(a)(ii).

Defendants argue that regardless of whether Plaintiff was joking, it was still reasonable for Officer Milholen to believe that Plaintiff was serious when she made the comment because he knew that "the KIA representative was concerned enough to call 911 and report Plaintiff's comments." [ECF No. 44] at 11. However, as the motion for summary judgment states, "[p]robable cause for a warrantless arrest exists [based on] the totality of facts and circumstances within a police officer's knowledge at the moment of arrest . . .." Carr v. Hoover, 837 Fed. Appx. 279, 284 (5th Cir. 2020) (citation omitted); Hill v. California, 401 U.S. 797 (1971) ("[O]n the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time."). While Officer Milholen did

know that the KIA representative was concerned enough to call 911, the facts in evidence also indicate that he knew that Ms. Bonds had ended the call by telling the KIA agent that she had saved twenty kindergarteners' lives. This fact tends to negate the presence of probable cause, and therefore summary judgment on this issue is not appropriate.

Defendants also claim that Officer Milholen had probable cause to arrest Ms. Bonds for attempting to obtain a reward, favor, or advantage "by threatening to inflict bodily injury on any person or by committing or threatening to commit any other criminal offense." [ECF No. 44] at 9; Miss. Code § 97-3-82(2). Defendants explain that "Plaintiff clearly attempted to get her KIA app fixed by threatening bodily harm to her students." [ECF No. 44] at 9. As the Court explained above, it is not clear whether Plaintiff made the statement to induce the agent to fix her KIA app; therefore, this code provision does not provide sufficient evidence of probable cause to grant summary judgment.

Finally, Defendants claim there was probable cause to arrest Ms. Bonds for "disturb[ing] the peace of others by intimidation or seeking to intimidate any other person, or by conduct which may lead to a breach of the peace." Id. at 10 (citing Miss. Code § 97-35-15). Defendants do not explain how defendant's conduct breached the peace, and there is no indication that any peace was disturbed

by Plaintiff's comments. Furthermore, there is a question as to whether Plaintiff was seeking to intimidate the KIA agent or was just expressing her frustration at her own situation. Indeed, just before Plaintiff made the statement about killing kindergartners, she told the KIA agent that she was frustrated and that she did not mean to take it out on the KIA representative. [ECF No. 49-2].

Defendants also claim that because Judge McKenzie found that there was probable cause to support Plaintiff's arrest, the Court must find that there was probable cause. As Defendants explain, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." [ECF No. 44] at 10; See Anokwuru v. City of Houston, 2021 WL 968830, *4 (5th Cir. Mar. 16, 2021) (emphasis added; quoted case omitted). Even if there was not probable cause at the time of the arrest, if a judge or grand jury later finds that there was probable cause, the arresting officer is insulated from liability.

According to Defendants, Judge McKenzie "found that there was probable cause to support Plaintiff's arrest when she first denied bond on April 14 and then again when she set a bond of $750,000 on April 17." [ECF No. 44] at 10. In Ms. Bonds's case, the grand jury

13

returned a "No Bill," and she received no probable cause hearing. [ECF No. 44] at 6, [ECF No. 53] at 5. Defendants rely only on the bond conditions as evidence of a probable cause finding by an independent intermediary. "A reference to bond conditions in conjunction with a forthcoming probable cause determination is not enough, without more, to support to support the independent-intermediary doctrine for summary judgment purposes." Holcomb v. McCraw, 262 F. Supp. 3d 437, 452 n.4 (W.D. Tex. 2017). Because it is unclear at this juncture whether there was probable cause justifying Plaintiff's arrest, the Court denies summary judgment on Plaintiff's false arrest and false imprisonment claims.

3. Whether Plaintiff Suffered a Due Process Violation

The Court next addresses whether Defendants are entitled to summary judgment on Plaintiff's Section 1983 claim for a due process violation. The Complaint claims that Ms. Bonds was deprived of liberty without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution, but it does not provide any further details. [ECF No. 1] ¶ 43. In her response to the instant motion, Ms. Bond states that even though her comments never posed a real threat, "after her arrest that morning, Plaintiff Bonds was incarcerated for seven days without a probable cause hearing before a circuit judge." [ECF No.50] at 1.

The Fifth Circuit has held that a Fourteenth Amendment substantive due process claim based on detention without probable cause is "foreclosed by the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)," in which the Supreme Court held that "there was no Fourteenth Amendment liberty interest or [general] substantive due process right to be free from criminal prosecution unsupported by probable cause." See Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 814 (5th Cir. 2010) (internal quotation marks omitted); Ragsdale v. Mallet, No. 3:19CV252-MPM-JMV, 2020 WL 7220834 at *6 (N.D. Miss. Sept. 18, 2020), report and recommendation adopted, No. 3:19CV252-M-V, 2020 WL 7186755 (N.D. Miss. Dec. 7, 2020). To the extent that Plaintiff's due process claim is based on detention without probable cause, it fails.

However, "[t]he Supreme Court has held that the Fourth Amendment requires a fair determination of probable cause to be made 'promptly after arrest.'" Ragsdale, 2020 WL 7220834 at *6 (N.D. Miss. Sept. 18, 2020) (citing Gerstein v. Pugh, 420 U.S. 103, 125, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)). Plaintiff alleges that her "incarceration without a preliminary hearing violated specific United States Supreme Court precedent in Gerstein." [ECF No. 50] at 15. The parties disagree as to whether Ms. Bonds was granted a hearing promptly enough to comply with Gerstein. According to Plaintiff, her hearing was set for April 24, 2023,

which meant she would have been incarcerated from April 13 through April 24 without a preliminary hearing. Id. at 15. Defendants argue that Plaintiff's initial appearance on Monday, April 17, 2023, constituted a fair determination of probable cause and that even if it did not, the fact that Judge McKenzie reviewed the charging affidavit and case file documents and determined that Ms. Bonds should be held without bail over the weekend on Friday, April 14, 2023, satisfied Gerstein. [ECF No. 53] at 8. There is a genuine dispute of material fact as to whether the events occurring on April 14 or April 17 were "prompt" enough not to offend the constitution and if or when the judge considered probable cause. Therefore, the Court declines to grant summary judgment on this issue.

### 4. Whether Plaintiff Suffered Malicious Prosecution

Plaintiff also sues Defendants for malicious prosecution. The elements of a malicious prosecution claim are:

> "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."

16

Armstrong v. Ashley, 60 F.4th 262, 279 (5th Cir. 2023).

Defendants argue that this claim fails because probable cause existed and because there is no evidence of malice. [ECF No. 53] at 14-15. As the Court has discussed above, there is a genuine dispute of material fact as to whether probable cause existed. To determine whether a defendant acted with malice, a court must look to the circumstances of the case, and "the Supreme Court has held that malice may be inferred from lack of probable cause." Eason v. City of Senatobia, 776 F. Supp. 3d 492, 504 (N.D. Miss. 2025) (citing Stewart v. Sonneborn, 98 U.S. 187, 192, 25 L.Ed. 116 (1878)). The Fifth Circuit has cautioned against using state tort law to define the federal offense of malicious prosecution. Castellano v. Fragozo, 352 F.3d 939, 955 (5th Cir. 2003). Although the Fifth Circuit has not defined "malice" in the malicious prosecution context without referencing state law, Black's Law Dictionary defines "malice" as "1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights." Id. at 505 (quoting Black's Law Dictionary (12th ed. 2024)). If a jury should find that Ms. Bonds was arrested and detained without probable cause, it could also find that the offending actors arrested and detained her with reckless disregard of her legal rights. Therefore, the Court denies summary judgment on Plaintiff's malicious prosecution claim.

17

5. Whether Plaintiff can Establish Municipal Liability

A municipality is liable for an action of one of its officers when that action was based on a municipal policy or custom. Specifically, municipal liability arises "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978). "Local governments are liable for a policy or custom that causes a constitutional injury under Section 1983." Austin v. City of Pasadena, Texas, 74 F.4th 312, 332 (5th Cir. 2023) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "To succeed on a Monell claim, plaintiffs 'must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom).'" Id. (citing Newbury v. City of Windcrest, 991 F.3d 672, 680 (5th Cir. 2021) (quotation marks and citation omitted).

The first element, the existence of an official policy or custom, is satisfied if a practice is "so persistent and widespread as to practically have the force of law." Id. (citing Austin v.

City of Pasadena, Texas, 74 F.4th 312, 332 (5th Cir. 2023). It is
also satisfied if a plaintiff can show that the alleged
constitutional violation was caused by "a policy statement,
ordinance, regulation, or decision that is officially adopted and
promulgated by the municipality's lawmaking officers or by an
official to whom the lawmakers have delegated policy-making
authority." Bennett v. City of Slidell, 735 F.2d 861, 862 (5th
Cir. 1984).

Here, "Plaintiff argues that the City is liable for Woodall's
role in keeping Plaintiff in jail without a probable cause hearing
or an initial appearance because Woodall acted as a final
policymaker for the City." [ECF No. 53] at 9 (citing [ECF No. 50]
at 10-12). Defendants respond that "Woodall had nothing to do with
the determination of whether Plaintiff should have received a
probable cause hearing or getting Plaintiff an initial
appearance." Id. Furthermore, Defendants explain that under
Mississippi law the City's Board of Alderman is its final
policymaker, not Woodall. [ECF No. 53] at 9. Therefore, to show
that Chief Woodall is a city policymaker, Plaintiff must provide
evidence of delegation of policy-making power.

Plaintiff alleges that "Chief Woodall had the authority to
set Magnolia's policies for prosecution an incarceration of
arrestees" and that therefore her act of ordering Ms. Bonds's

incarceration without a warrant or a probable cause hearing "renders both Chief Woodall and Magnolia liable." [ECF No. 50] at 11. To support her claim that Chief Woodall is responsible for Magnolia's policies for prosecution and incarceration of arrestees, Plaintiff cites Woodall's deposition, in which she was asked whether she decides whether a teacher is entitled to a probable cause hearing under Miss. Code Ann. Section 99-3-28(1)(a). When asked whether she personally "will decide whether [an arrested] school teacher deserves a probable cause hearing by deciding whether she's active within the scope for employment," Chief Woodall replied "yes." [ECF No. 50-1] at 38-39. This exchange raises a factual question as to whether Chief Woodall had policymaking authority that would make the City liable for her decision not to grant Plaintiff a probable cause hearing. Because a genuine dispute of material fact exists as to whether municipal liability is appropriate in this case, the Court declines to grant summary judgment on this issue.

6. Whether Defendants are Entitled to Qualified Immunity

Finally, Defendants Officer Milholen and Chief Woodall claim they are shielded from individual liability on qualified immunity grounds. [ECF No. 44] at 17.

Supreme Court precedent holds that police officers are entitled to qualified immunity under § 1983 unless "(1) they violated a

federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018). Courts have discretion to decide whether to first address the constitutional violation prong or the clearly established prong. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "Clearly established" means that "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." Wesby, 583 U.S. at 63 (citing al-Kidd 563 U.S. at 741) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate" for the unlawfulness of an officer's conduct to be clearly established. al-Kidd, 563 U.S. at 741. The precedent must be "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 583 U.S. at 63.

As discussed above, there are genuine issues of material fact that bear on the determination of whether a reasonable officer could have believed that Ms. Bonds's arrest was lawful. Namely, there is a genuine factual dispute as to whether a reasonable officer would have believed probable cause existed under these circumstances. Furthermore, there are genuine issues of material

fact as to whether Plaintiff was detained illegally without a probable cause hearing and whether the circumstances of this case provide sufficient evidence of malice for Defendants to be liable for a malicious prosecution. Therefore, the Court finds that summary judgment is improper.

B. Whether Defendants are Entitled to Summary Judgment on Plaintiff's State Law Claims

    1. Unlawful Arrest

Defendants explain that:

"Mississippi Code Annotated Section 11-46-9(1)(c) provides that any governmental entity and its employees acting within the course and scope of employment shall not be liable for any claim 'arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.'"

[ECF No. 44] at 20; Miss. Code § 11-46-9(1)(c).

Defendants argue that Plaintiff cannot establish a claim for unlawful arrest because she cannot show that the officers acted

with reckless disregard, which "exceeds gross negligence and embraces willful and wanton conduct . . . 'so far from a proper state of mind that it is treated in many respects as if harm was intended.'". [ECF No. 44] at 20; <u>Miss. Dep't of Pub. Safety v. Durn</u>, 861 So. 2d 990, 994-95 (Miss. 2003); <u>Maldonado v. Kelly</u>, 768 So. 2d 906, 910 (Miss. 2000). However, as the Court discussed above, if Plaintiff was arrested and held without probable cause, it is a fact issue as to whether these actions were taken in reckless disregard for her wellbeing. The record suggests that Officer Milholen knew that Ms. Bonds had told the KIA agent that she had saved the lives of twenty kindergartners, which would mean there was no current danger or ongoing criminal activity to justify a warrantless arrest. Therefore, the Court declines to grant summary judgment.

Defendants proceed to argue that Plaintiff's claims are barred because she was engaged in criminal activity at the time of her injury, namely, threatening to kill kindergarten students. As discussed above, any perceived threat from Plaintiff's distasteful comment had concluded by the time she was arrested; the Court finds summary judgment is not proper. Defendants further claim that Plaintiff's state law claims for unlawful arrest and false imprisonment fail because there was probable cause to arrest her. [ECF No. 44] at 20. As discussed above, there is a genuine dispute of material fact as to whether probable cause existed, and

therefore summary judgment is not appropriate. Therefore, summary judgment is denied as to Plaintiff's state law unlawful arrest claim.

   2. Malicious Prosecution

   To recover for malicious prosecution under Mississippi law, a Plaintiff must show "'(1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution.'" Univ. of Mississippi Med. Ctr. v. Oliver, 235 So. 3d 75, 83 (Miss. 2017) (quoting Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss. 1991). Defendants argue that this claim fails because Plaintiff cannot malice or a lack of probable cause. [ECF No. 44] at 20. The Court has already explained that there is a genuine dispute of material fact as to whether there was probable cause at the time of Plaintiff's arrest. As to the malice prong, Ms. Bonds argues that "absence of probable cause for a prosecution is circumstantial evidence of malice and a jury may infer malice from finding the party acted in reckless disregard of another person's rights." [ECF No. 50] at 23. The Supreme Court of Mississippi has held that "the absence of probable cause for a prosecution is circumstantial evidence of malice, and the jury may

24

infer malice from a finding that the defendant acted in reckless disregard of another person's rights." <u>Junior Food Stores, Inc. v. Rice</u>, 671 So. 2d 67, 73 (Miss. 1996) (citing <u>*C & C Trucking Co. v. Smith,*</u> 612 So.2d 1092, 1100 (Miss.1992). As the Court discussed above, there is a genuine dispute of material fact as to whether there was probable cause; therefore, the Court denies summary judgment.

IV.  Conclusion

The defendants to this action are not entitled to summary judgment on any of the above grounds.

Accordingly,

IT IS HEEREBY ORDERED that Defendants' Motion for Summary Judgment [ECF No. 43] is DENIED.

SO ORDERED, this the 21st day of August 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE